**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No. 1:24-cr-10200-RGS |
| | ) |
| v. | ) |
| | ) |
| DEV ANANTH DURAI, | ) |
|   a/k/a "Devah," | ) |
| | ) |
|     Defendant. | ) |

**DECLARATION OF ERIC S. ROSEN**

I, Eric S. Rosen, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am a partner at the law firm of Dynamis LLP, counsel of record for Defendant Dev Ananth Durai in the above-captioned case. I submit this declaration in support of Mr. Durai's Motion to Secure Entry into the United States. I have personal knowledge of the facts set forth in this declaration.

2.     Mr. Durai is one of eight defendants named in the Superseding Indictment (the "Indictment"), which was returned under seal on November 4, 2025 and unsealed on November 18, 2025. Mr. Durai is a citizen of Singapore. He has never lived, worked, or held assets in the United States. He was not in the United States when the Indictment was unsealed.

3.     As a Singapore citizen, Mr. Durai requires authorization to travel to the United States. He has previously traveled to the United States using Electronic System for Travel Authorization ("ESTA") authorization. Following the unsealing of the Indictment, Mr. Durai discovered that his ESTA status had been changed from "approved" to "administrative processing," which prevented him from boarding a commercial flight to the United States.

4.      On December 3, 2025, less than two weeks after the unsealing, I, together with co-counsel, contacted the Government on Mr. Durai's behalf to initiate discussions regarding voluntary surrender. A true and correct copy of this correspondence is attached as Exhibit A.

5.      From the outset of these communications, the Government repeatedly asked that Mr. Durai come to the United States and cooperate. In multiple telephone calls in December 2025, the Government indicated that it could facilitate Mr. Durai's entry without extradition, but conditioned that facilitation on his agreement to cooperate. Mr. Durai did not agree to unconditionally cooperate prior to the review of any discovery.

6.      On January 13, 2026, I and my colleague met in person with the assigned prosecutors at the United States Attorney's Office in Boston. At that meeting, I proposed a bail package that included a $75,000 secured bond, voluntary self-surrender at a U.S. port of entry, surrender of Mr. Durai's travel documents, GPS monitoring, travel restricted to the Eastern Seaboard, regular reporting to Pretrial Services, and no contact with co-defendants or witnesses. The Government stated that it considered Mr. Durai a fugitive and took the position that the only acceptable path for him to appear was extradition from Singapore.

7.      On January 20, 2026, the Government formally rejected Mr. Durai's proposed voluntary surrender. The Government refused to withdraw the arrest warrant, refused to permit self-surrender, refused to agree to any bail conditions, refused to coordinate with Customs and Border Protection regarding Mr. Durai's ESTA authorization, and refused to support parole into the United States under 8 U.S.C. § 1182(d)(5). The Government described Mr. Durai as a "fugitive" who "fled his home country to a non-extradition country" and who was "attempting to leverage his status as a fugitive . . . to obtain concessions from the government." A true and correct copy of this correspondence is attached as Exhibit B.

8.      In a separate telephone call around this time, the prosecutors made clear that Mr. Durai could come to the United States if he agreed, in advance, to cooperate.

9.      On February 3, 2026, I, together with co-counsel, wrote to the Criminal Chiefs of the United States Attorney's Office. The letter proposed two specific mechanisms for Mr. Durai's voluntary appearance: (a) managed self-surrender coordinated with the United States Marshals Service and Customs and Border Protection, or (b) in the alternative, parole into the country under 8 U.S.C. § 1182(d)(5) for the limited purpose of entry, immediate surrender, and court appearance. The letter explained that Mr. Durai was not a fugitive and that he wanted to come to the United States to face the charges. A true and correct copy of this letter is attached as Exhibit C.

10.     On February 20, 2026, Criminal Chief William F. Abely responded by letter, again refusing to allow Mr. Durai to enter the United States. The letter characterized the defense's requests as an attempt to extract "concessions" and "benefits" in exchange for Mr. Durai's appearance. The letter claimed that Mr. Durai "has already fled and has been a fugitive for approximately three months." The Government's only proposed path for Mr. Durai's appearance was to return to Singapore and waive extradition: "If the Defendant surrenders promptly to authorities in Singapore and waives extradition, we will seek his prompt transfer to the United States." A true and correct copy of this letter is attached as Exhibit D.

11.     Based on my experience as defense counsel, I have become familiar with individuals being extradited from Singapore to the United States. It is very difficult, if not impossible, to obtain bond while an extradition proceeding is pending. At minimum, it takes at least six months to extradite from Singapore, even if a person waives all extradition proceedings. The conditions detainees are held in during this time are appalling: multiple individuals are generally crowded into a cell and forced to sleep on the floor. One client of mine contracted scabies

while detained in Singapore. Further, I have learned that a co-defendant, Zhi "Josh" Ge, was arrested in Singapore and has been detained awaiting extradition. As of the date of this declaration, Mr. Ge has been detained for more than eighteen months.

12.     On March 7, 2026, I wrote again, this time to Deputy Criminal Chief David D'Addio. In this email, I asked simply that the Government facilitate a parole into the country so that Mr. Durai could board a plane, come to the United States, and be presented to a Magistrate Judge. The email did not request that the Government agree to any bail package or other conditions. A true and correct copy of this email is attached as Exhibit E.

13.     On March 16, 2026, the criminal division chiefs rejected this proposal in a telephone call. They provided no reasoning other than to state that there was "nothing new" being offered.

14.     On March 17, 2026, I sent an email to the Government pointing out that the March 7 proposal was, in fact, new because it did not request a bail package, and further expressing concern that Mr. Durai was being punished for declining to cooperate prior to reviewing any discovery. A true and correct copy of this email is attached as Exhibit F.

15.     On March 19, 2026, the Government rejected those points by email, stating that a U.S. arrest warrant had been issued for Mr. Durai at the time he flew to China, and further stating that it was Mr. Durai who had proposed cooperation. A true and correct copy of this email is attached as Exhibit G. I responded stating that the U.S. warrant was not effective in Singapore, and I had been referring to process that would be effective in Singapore.

16.     Since March 19, 2026, the Government has declined to engage further on the issue of Mr. Durai's entry into the United States.

17.     In sum, between December 2025 and March 2026, my office and the Government exchanged numerous written communications, participated in multiple telephone calls, and met in person at the United States Attorney's Office. Across those communications, I submitted multiple proposals for Mr. Durai's voluntary entry into the United States. The Government rejected every one.

18.     Attached as <u>Exhibit H</u> is a true and correct copy of Mr. Durai's travel records, which reflect extensive and regular international travel for business purposes. In 2025 alone, Mr. Durai's travel records reflect more than 70 distinct border crossings: 25 arrivals in Hong Kong, 13 entries into mainland China, 5 entries into Japan, 5 entries into South Korea, and additional trips to Europe, Thailand, and Taiwan.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Dated: April 14, 2026
Boston, Massachusetts

Respectfully submitted,

*/s/ Eric S. Rosen*
Eric S. Rosen

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on April 14, 2026, a true and correct copy of the above declaration was filed

with the Court's CM/ECF system, which has generated and delivered electronic notices of filing

to all counsel of record who have consented to electronic service.

*/s/ Eric S. Rosen*
Eric S. Rosen
DYNAMIS LLP
175 Federal Street, Suite 1200
Boston, MA 02110
(646) 541-8484
erosen@dynamisllp.com